Lawrence Ellis MOORE,
Plaintiff-Appellant,

v.

Donald DEVINE, Director of the Office of Personnel Management, et al.,
Defendants-Appellees.

No. 84–8416.

United States Court of Appeals,
Eleventh Circuit.

Aug. 12, 1985.

Richard H. Sinkfield, Atlanta, Ga., for plaintiff-appellant.

Myles E. Eastwood, Asst. U.S. Atty., Atlanta, Ga., for defendants-appellees.

Susan Murphy, E.E.O.C., Office of Gen. Counsel, Appellate Div., Washington, D.C., for C. Thomas-E.E.O.C.

Before KRAVITCH and CLARK, Circuit Judges, and PECK*, Senior Circuit Judges.

CLARK, Circuit Judge:

This action, which is based upon Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., was filed by the plaintiff,

* Honorable John W. Peck, U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

Lawrence Moore, in order to redress injuries sustained due to the alleged racially discriminatory policies and practices of the defendants.

The plaintiff's claims have their roots in his employment by the United States Civil Service Commission (CSC). In 1972, the plaintiff began working at the Atlanta Regional Office of the CSC. From 1974 until 1979 the plaintiff was the Regional EEO Representative in the office, a position which carried the grade of GS–13. The CSC ceased to exist in January, 1979 and at that time its functions were transferred to approximately four agencies, i.e., the Office of Personnel Management (OPM); the Merit System Protection Board; the Federal Labor Relations Authority; and the Equal Employment Opportunity Commission (EEOC).[1] When these changes occurred, the plaintiff's functions as the CSC's Atlanta Regional Equal Employment Opportunity Representative were transferred, along with the plaintiff himself, to the EEOC.

In March, 1979, the plaintiff filed a charge of racial discrimination against the CSC. He later appealed to the EEOC from an adverse agency decision. In his EEOC appeal, the plaintiff alleged that he was not promoted to the position of Atlanta Area Manager because of his race. Next, he claimed that he was discriminatorily excluded from the Officer of the Day Program and was adversely affected by an inaccurate performance appraisal. The plaintiff's last argument was that the agency's denial of his request for a reclassification of his position to a GS–14 was discriminatory and thus violated Title VII of the Civil Rights Act of 1964.

The EEOC issued a final decision in which it found against the plaintiff on his promotion claim. However, it concluded that the plaintiff had been discriminated against because of his race in connection with the Officer of the Day Program.

Thus, the EEOC ordered the OPM to provide the plaintiff with equal opportunities "to participate in all aspects of the job shared by other Executive level staff including but not limited to the Officer of the Day Project." *Record* at 51. The EEOC did not rule on the merits of the plaintiff's reclassification claim because the record did not provide "relevant data and information regarding, *inter alia,* the comparison of [the plaintiff's] duties with those of the upgraded employee, the agency's employee evaluation practices, the performance appraisals of blacks compared to other non-black employees, and the circumstances surrounding the labor relations officer's change in grade." *Id.* at 49. As a result, the EEOC remanded the issue to the OPM and instructed it to conduct a comparative audit of both positions. The plaintiff's GS–13 job functions were to be compared to those of the GS–14 labor relations position. After completion of the audit, the EEOC indicated that it would then reconsider the decision regarding the reclassification issue in light of the results the audit produced. The OPM refused to comply with the EEOC order.

The plaintiff filed this action in the District Court for the Northern District of Georgia and raised three claims. First, he argued that he was not promoted because of his race.[2] Next, he asserted that his position should have been reclassified for two reasons: (1) the application of the alignment criteria, which would have considered the plaintiff's workload in the context of the workload of his co-workers in the Atlanta office, would have justified his reclassification to a higher grade level; and (2) the application of the "impact of the man on the job" criteria by his supervisor would have resulted in the reclassification of his position. The plaintiff also claimed that he was excluded from the Officer of the Day Program because of his race. The plaintiff's final contention was that the fi-

---

1. *See* Reorganization Plan No. 1 of 1978, 43 Fed.Reg. 19807, *reprinted in* 42 U.S.C.A. § 2000e–4 at 311–15; Exec. Order No. 12106, 44 Fed.Reg. 1053 (1978), *reprinted in* 42 U.S.C.A. § 2000e–4 at 316–17.

2. The promotion issue was not raised on appeal.

nal decision of the EEOC, which ordered an audit and found discrimination in the Officer of the Day Program, should have been specifically enforced.

The case was tried to the court without the intervention of a jury. The court found in favor of the defendants on all of the issues of discrimination. This appeal followed. Because the district court's ultimate finding of the absence of racial discrimination is not clearly erroneous, we AFFIRM.

## DISCUSSION

In this appeal the plaintiff alleges three grounds for error. First, he claims that the "internal alignment" and "impact of the man on the job" criteria was not applied with respect to his reclassification request because of his race. Second, he contends that he was not included in the Officer of the Day Program because of his race. His last claim is that the final order of the EEOC should be enforced. We now address these claims.

I. *Reclassification*
A. *Failure to Consider the "Internal Alignment" Criteria*

The evidence showed that the plaintiff's supervisor was David Caldwell. Mr. Cald-

well accepted the position of Regional Director of the Atlanta office in 1974. Some of the other executives in the Atlanta Regional Office were the Chiefs of Training, Staffing, Labor Management Relations and Regional Equal Employment Opportunities, the latter position being held by plaintiff. With the exception of the plaintiff, all of the executives were white and were one level higher in terms of their grade than similarly situated executives in the smaller CSC regional offices.

The evidence demonstrated that most of the executives in the large regional offices were two grades higher than the Regional EEO Representatives in the large offices. However, the Labor Management Relations Officers were generally one grade higher than the Regional EEO Representatives. In the small regional offices, most of the executives were one grade higher than the Regional EEO Representatives. However, the Labor Management Relations Officers in the small offices generally held the same grade as the Regional EEO Representatives. Most of the Regional EEO Representatives were minorities. Plaintiff's Exhibit 24 illustrated this difference.

REGIONAL EXECUTIVE STAFF GRADES[A]
(W/OUTSIDE MONITORING ADV. RESP)

| REGION | SIZE | CHIEF STAFFING | CHIEF PMED | CHIEF TRAINING | CHIEF (IPPD) INT' GOVT PROG | CHIEF LMR | CHIEF REEO | DOCUMENT DATES |
|---|---|---|---|---|---|---|---|---|
| Atlanta (Southeast) | L | GS-15 | GS-15 | GS-15 | GS-15 | GS-14 | GS-13 | 1979 #1 |
| Chicago (Great Lakes) | L | GS-15 | GS-15 | GS-15 | GS-15 | GS-13 | GS-13 | 1979 #3 |
| Dallas (Southeast) | L | GS-15 | GS-15 | GS-15 | GS-15 | GS-14 | GS-13 | 1978 #5 |
| Phil. (Mid-Atl.) | L | GS-15 | GS-15 | GS-15 | GS-15 | GS-14 | GS-13 | 1979 #7 |
| San Fran. (Western) | L | GS-15 | GS-15 | GS-15 | GS-15 | GS-14 | GS-13 | 1978–79 #8 |
| Boston (New Eng.) | S | GS-14 | GS-14 | GS-14 | GS-14 | GS-13 | GS-13 | 1979 #2 |
| Denver (Rocky Mtn.) | S | GS-14 | GS-14 | GS-14 | GS-14 | GS-13 | GS-13 | 1979 #4 |
| New York (Eastern) | S | No Ref. | | | | | | |
| St. Louis (Mid-Continent) | S | GS-14 | GS-14 | GS-14 | GS-14 | GS-13 | GS-13 | Undated #6 |
| Seattle (Northwest) | S | GS-14 | GS-14 | GS-14 | GS-14 | GS-13 | GS-12 | 1979 #9 |

[A] L = Large Office
S = Small Office

During his tenure as Regional Director, Mr. Caldwell annually certified the accuracy of the position descriptions of his staff. Mr. Caldwell did not recommend that the plaintiff's position be reclassified so that the position would be aligned with other positions in the Atlanta office.

The plaintiff argues that his position should have been reclassified under the classification principle known as "internal alignment."[3] The plaintiff claims that the position of Regional EEO Representative was not appropriately aligned with the positions of white executives in the Atlanta

3. This principle requires a classifier to consider whether the position under evaluation is appro-priately aligned with positions that have comparable responsibilities.

**1546**

office that had comparable responsibilities. It is urged that the plaintiff and the white executives held the same position descriptions as their counterparts in the smaller offices. Although the white executives were uniformly rated at least one grade higher than their counterparts in the smaller offices, the plaintiff held the same grade as the EEO Representatives in the smaller offices. According to the plaintiff, this grade disparity illustrates that due to his race the principle of internal alignment was not applied so that he could receive a higher grade or a "grade premium". The plaintiff further asserts that the district court was confused about the law because it reasoned that the focus of any discrimination would have to be on Mr. Caldwell.

The defendants contend that the plaintiff's position was properly classified and that they presented legitimate nondiscriminatory reasons for the grade disparity. The defendants direct the court to one of the plaintiff's arguments, i.e., that the Labor Relations Officer and Regional EEO Representative positions were so similar that a comparison of the two should have highlighted any discrimination. The defendants argue the evidence established that the Labor Relations Officer position in the Atlanta office was more complex than the Regional EEO Representative position and as a result the former was properly graded at a GS–14. Finally, they urge that because of the extensive evidence of Mr. Caldwell's efforts to promote affirmative action, the plaintiff did not prove discriminatory intent and thus cannot prevail on this claim.

■ In order to prove discriminatory treatment a plaintiff must establish a prima facie case of discrimination. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The district court in this case found that a prima facie case had not been established. We agree.

■ The statistics presented failed to establish a prima facie case of racial discrimination. The plaintiff did not prove that: (1) white executives in "comparable" positions received a grade premium; or (2) the differences in the grades was a result of racial considerations.

■ Moreover, the evidence presented at trial only permitted a comparison of the plaintiff's position and the position of the Labor Relations Officer. The district court specifically found that the Labor Relations Officer's position was more complex and required a greater exercise of discretion. After reviewing the record, we conclude that this finding is supported by substantial evidence and thus is not clearly erroneous.[4]

The plaintiff and the Labor Relations Officer had different duties and responsibilities. Thus, Mr. Caldwell was under no duty to recommend a reclassification of the plaintiff's position. During his tenure, Mr. Caldwell did not recommend a reclassification of any position. However, even if Mr. Caldwell had recommended a reclassification of the Labor Relations Officer's position, his failure to recommend a reclassification of the plaintiff's position would not have been discriminatory because the two positions were different. As we stated in

---

**4.** On appeal, the court reviews the district court's findings of fact under the clearly erroneous standard. "The ultimate issue, that of discrimination, is to be treated by district and appellate courts in the same manner as any other issue of fact." *Baylor v. Jefferson County Board of Education*, 733 F.2d 1527, 1532 (11th Cir.1984). The district court's findings of fact "are not to be rejected unless the reviewing court is left with a definite and firm impression that a mistake has been made." *Morgado v. Birmingham-Jefferson County Civil Defense*

*Corps*, 706 F.2d 1184, 1888 (11th Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 715, 79 L.Ed.2d 178 (1984). Although the clearly erroneous standard of review requires substantial deference to the findings of the district court, " '[o]ur deference to the district court is not unlimited, ... and we will hold a finding of fact clearly erroneous if the record lacks substantial evidence to support it.' " *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir.1984).

*Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181 (11th Cir.1984):

> "[I]f an employer applies a rule differently to people it believes are differently situated, no discriminatory intent has been shown." ... Nix did not meet his burden of showing that a white employee *in similar circumstances* was retained while he was fired. He failed, therefore, to make out a prima facie case or to create an inference of discrimination.

*Id.* at 1186–87.

■ "Because [the plaintiff] did not make out a prima facie case, he cannot prevail merely by showing that the articulated reason [for the grade disparity] was probably not the true reason." *Id.* at 1187. The plaintiff had the burden of proving intentional discrimination. *See United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983).

The plaintiff has not presented direct or circumstantial evidence sufficient to support a finding of intentional discrimination. There is nothing in the record that would support a conclusion that Mr. Caldwell or the previous director of the Atlanta Regional office failed to recommend that the plaintiff's position be reclassified because of the plaintiff's race. There is also insufficient evidence that officials at the CSC deviated from established procedures or incorrectly evaluated factors when the position of Regional EEO Representative was assigned the grade of GS–13.[5] In the absence of evidence supporting a finding that race was a factor in the defendants' employment decisions, we must hold that the plaintiff has failed to meet his burden of proof.

**B.** *Failure to Consider the "Impact of the Man on the Job" Criteria*

■ In 1972, the Regional Director who preceded Mr. Caldwell recommended a reclassification of Mr. Edward L. Martin's position under the "impact of the man on the job" classification principle.[6] This occurred two years prior to the plaintiff becoming the Regional EEO Officer. Under this classification principle, Mr. Martin's position as Labor Relations Officer in the Atlanta Regional Office, was reclassified to a GS–14 grade.

During his tenure, Mr. Caldwell did not recommend an "impact of the man on the job" reclassification for either the plaintiff

---

**5.** The defendants argue that they were required by statute to set grades in accordance with prescribed standards. *See* 5 U.S.C. §§ 5105–5107. The plaintiff did not present evidence that the defendants deviated from established standards when they initially established the grade for EEO Representatives employed by the CSC.

**6.** *Classification Principles & Policies,* was a publication of the CSC that described the "impact of the man on the job" reclassifications. It provided in part:

> It is a basic tenet of position classification that it is the position which is classified, not the particular individual who is performing the work of the position. Yet consistent with this basic tenet is the concept *that an incumbent of a position may have an important impact on the position he holds, sometimes to the point where the position is so changed that its classification must also be changed.* In other words, the qualifications and ability of the individual can have a material effect on the *kind* or the *level* of work of the job as he performs it.

> .     .     .     .     .

> It should be clearly understood that the mere fact that an individual in a position stands out from other individuals in comparable, or what otherwise may have been assumed to be identical, positions should not by itself be interpreted as grounds for a higher grade for the incumbent. A careful review must be made of the positions with which comparison is being made to determine whether they are really being fully and adequately performed. In other words, *the job which is thought to reflect the impact of the highly competent incumbent must be evaluated against a general standard, not merely against other comparable jobs around it.* One of the earmarks of such a job is that it is one in which a change in incumbency would require a reevaluation of the job and frequently the filling of it at a lower grade.

> In sum, *the impact of the man on the job is reflected in the classification when and because it actually makes the job materially different than it otherwise would have been.* This difference may require a change in classification of the job to a higher or lower grade or to a different series.

Defendants' Exhibit 36 (emphasis added).

or the Labor Relations Officer.[7] At trial, Mr. Caldwell testified that the Labor Relations Officer, Mr. Martin, was properly classified as a GS–14 and that the plaintiff was properly classified as a GS–13. *Record* at 514. He compared and contrasted the two positions and concluded that the position of the Labor Relations Officer was more complex. For example, Mr. Caldwell testified that the Labor Relations Officer advised agencies, negotiated agreements, accumulated information and data, and regularly developed training programs along with the accompanying handouts. The plaintiff however, had a confined responsibility and was not directly involved in the implementation of affirmative action plans. The plaintiff also reviewed outlines of training programs provided by the Regional Center to assure that proper attention was given to EEO matters. Although the plaintiff occasionally served as a guest lecturer, he never developed a complete training program in the EEO area. *Record* at 514–518.

The plaintiff testified that both he and the Labor Relations Officer had three subordinates. The plaintiff's testimony regarding his duties as a Regional Equal Employment Representative was similar to Mr. Caldwell's testimony. The plaintiff acknowledged that his primary responsibility was to conduct oversight of affirmative action and EEO programs. In addition, he served as an expert lecturer in training programs, and as a consultant to the Training Center on EEO matters. He also maintained an ongoing liaison with minority and women's groups and consistently advised and provided assistance to agencies so that their programs could be conducted in accordance with the law. *Record* at 39–45. The plaintiff admitted, however, that he did not personally prepare EEO or affirmative action plans for the agencies. *Id.* at 118.

The district court found that the plaintiff did not establish a prima facie case. The plaintiff argues that the district court's conclusion was in error. The defendants argue that the district court properly found that the plaintiff failed to prove intentional discrimination.

We agree that the plaintiff failed to establish a prima facie case. First, the plaintiff did not show that he was treated differently. As the district court pointed out, Mr. Caldwell did not recommend a reclassification of any executive position during his tenure as Regional Director.

Assuming, as the plaintiff contends that the court's analysis caused it to improperly restrict its focus to a particular discriminating official, we nevertheless conclude that the plaintiff did not establish a prima facie case because he failed to prove that he was treated differently than a "similarly situated" employee. The only evidence that the plaintiff presented related to the duties of the Labor Relations Officer and the Regional EEO Representative. Since we have concluded that the Labor Relations Officer and Regional EEO Representative positions were not similar, there is no evidence that a "similarly situated" employee was reclassified under the "impact of the man on the job" principle.

When a plaintiff fails to establish a prima facie case he cannot prevail by claiming that the defendant has failed to articulate a legitimate nondiscriminatory reason or by showing that the proffered reason was probably not the "true" reason. *See Nix v. WLCY Radio/Rahall Communications*, 738 F.2d at 1187. The plaintiff must prove intentional discrimination. Because there is insufficient evidence to support a finding of intentional discrimination, we must affirm the district court on this issue.[8]

---

**7.** In early 1977, the plaintiff requested a classification review of the position he occupied. The CSC did not consider the "impact of the man on the job" criteria when it evaluated the plaintiff's request.

**8.** The plaintiff also contends that the district court failed to consider whether the CSC dis-

criminated against him in connection with his request for reclassification by refusing to apply the same criteria to his request as applied to a similarly situated white employee.

After reviewing the pretrial documents, we conclude that this argument was not advanced in the trial court. Thus, we are not compelled to

## II. *Officer of the Day Program*

■ The Officer of the Day Program, which was developed by Mr. Caldwell and another party, was initiated in April or May of 1978 for the purpose of providing Mr. Caldwell and his staff with a person to answer the phone after hours, thus providing Mr. Caldwell and other senior executives with an opportunity to leave work at a normal time. Apparently, the program was viewed as a means for individual executives to demonstrate their ability to handle the agency's various problems. However, program participants were not afforded special consideration for assignments or promotions merely because of their participation.

The initial program proposal included all of the section chiefs and other persons who were GS–14 and above. The plaintiff's name was not on the initial proposal. The district court found that the individuals listed on the proposal were volunteers. There was also testimony that at least one white employee, who was a grade GS–13, volunteered and thus was allowed to participate in the program. The plaintiff testified that he did not participate in the program because he was not permitted to serve. However, Mr. Caldwell testified that the plaintiff never volunteered. The Officer of the Day Program was discontinued after approximately six to eight weeks of operation because it did not accomplish its objectives.

In this appeal the plaintiff argues that the CSC discriminated against him by failing to extend to him the same terms and conditions of employment as those extended to whites in comparable positions. According to the plaintiff his exclusion from the program constituted impermissible race discrimination. The defendants contend that the court did not err when it ruled that the plaintiff did not prove that the failure to include him in the Officer of the Day Program was based on discriminatory intent.

Because the district court found that the plaintiff established a prima facie case, the defendants' burden was to "produce evidence that [their] action was not motivated by discriminatory intent." *See Baylor v. Jefferson County Board of Education,* 733 F.2d 1527, 1532 (11th Cir.1984). The defendants carried their burden when they presented evidence that the program was voluntary and that all of the program participants were volunteers and were not specifically requested by an official to participate.

The plaintiff failed to meet his ultimate burden of persuading the trier of fact that the defendants intentionally discriminated against him. The plaintiff simply did not show that a discriminatory reason motivated the defendants or that the defendants' proffered explanations were unworthy of credence. Because we are not left with a definite and firm conviction that a mistake has been made, we cannot hold that the district court's finding was clearly erroneous. We therefore affirm the district court on this issue.

## III. *Enforcement of the Final EEOC Order*

The plaintiff argues that the district court should have enforced the final decision of the EEOC in which it found that the plaintiff's unexplained exclusion from the Officer of the Day Program was discriminatory and directed the OPM to order a comparative audit.

The district court found that the audit would not be meaningful or serve any useful purpose because of the court's previous rulings and concluded that the EEOC order was not binding on the court. Thus, the court did not enforce the order.

The plaintiff claims that the court did not have the authority to refuse to enforce the final order of the EEOC. The defendants

reach the merits of this claim. *See Baker v. Bell,* 630 F.2d 1046, 1055 (5th Cir.1980) ("Generally, this court will not reach the merits of an issue not considered by the trial court."). The

plaintiff raised a similar claim with regard to his "internal alignment" argument. This claim was not pursued in the district court and thus, will not be considered.

claim that the order is not binding upon this court under *Chandler v. Roudebush,* 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976). This issue concerns the binding effect of the final agency order upon the defendants. The parties agree that this issue presents a question of first impression.

In *Chandler* the petitioner, a federal employee, claimed that she was entitled to a *de novo* trial in the district court. The agency had not granted the petitioner any relief on her discrimination claims. In reaching its decision that federal employees have the same right to a trial *de novo* as is enjoyed by private sector and state government employees, the Court reviewed the legislative history of the 1972 amendments to § 706 of the Civil Rights Act of 1964:

> [T]he options which Congress considered were entirely straightforward. It faced a choice between record review of agency action based on traditional appellate standards and trial *de novo* of Title VII claims. The Senate committee selected trial *de novo* as the proper means for resolving the claims of federal employees. The Senate broadened the category of claims entitled to trial *de novo* to include those of private-sector employees, and the Senate's decision to treat private- and federal-sector employees alike in this respect was ratified by the Congress as a whole.
>
> . . . .
>
> The Congress was aware of the fact that federal employees would have the benefit of "appropriate procedures for an impartial [agency] adjudication of the complain[t]," and yet chose to give employees who had been through those procedures the right to file a *de novo* "civil action" equivalent to that enjoyed by private-sector employees.

*Chandler v. Roudebush,* 425 U.S. at 861–64, 96 S.Ct. at 1959–61 (footnotes omitted).

There are no decided cases that discuss the binding effect of a final agency order that is favorable to a federal employee.

However, a similar issue was discussed by the first circuit in *Blizard v. Fielding,* 572 F.2d 13 (1st Cir.1978). In *Blizard* the EEOC issued a finding of probable cause on a state government employee's claims of sex discrimination and discriminatory retaliation. The employee appealed from an adverse decision by the district court on these claims. The employee requested a finding that the district court committed reversible error by failing to mention the EEOC determination. In addressing the plaintiff's claim the court stated:

> [W]e note that, with respect to a finding of no probable cause by the Commission, the law today is clear: such finding will not bar a trial *de novo* on the charges. *Chandler v. Roudebush,* 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976); *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 38, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); *McDonnell Douglas [Corp. v. Green supra,* 411 U.S. [792] at 798–799, 93 S.Ct. 1817 [at 1822, 36 L.Ed.2d 668 (1973)]; *Developments in the Law— Employment Discrimination and Title VII of the Civil Rights Act of 1964,* 84 Harv.L.Rev. 1109, 1204–1205 (1971). *The same reasoning obtains here; both parties are entitled to an inquiry by a court into the charges. While recognizing that findings by the EEOC are entitled to great deference by the district court, we cannot say that a court is obliged to refer to those findings in its opinion.* It lies within the discretion of the trial court to comment or not on specific evidence. Mere failure of the court in this instance to make reference to the EEOC findings is not sufficient to sustain an allegation of prejudicial error.

*Id.* at 15–16 (emphasis added).

Although *Blizard* addressed the failure of the district court to refer to a finding of probable cause by the EEOC, its reasoning is relevant to this case. *Blizard* stands for the proposition that once a case is filed in the district court, both parties are entitled to *de novo* review and "while EEOC findings in general may be significant evidence, their probative force in individual cases

varies considerably and is left to the determination of the trial court." *Hilton v. Wymam-Gordon Company,* 624 F.2d 379, 383 (1st Cir.1980).

If, as the *Blizard* court points out, a court is not obliged to *refer* to EEOC findings in its opinion, it certainly is not required to *address* EEOC findings. This reasoning is consistent with *Smith v. Universal Services, Inc.,* 454 F.2d 154 (5th Cir.1972) in which the court stated:

> It is not to be denied that under Title VII, the action of the EEOC is not agency action of a quasi-judicial nature which determines the rights of the parties subject only to the possibility that the reviewing courts might conclude that the EEOC's actions are arbitrary, capricious or an abuse of discretion. Instead, the civil litigation at the district court level clearly takes on the character of a trial de novo, completely separate from the actions of the EEOC. *It is thus clear that the report is in no sense binding on the district court and is to be given no more weight than any other testimony given at trial.*

*Id.* at 157 (emphasis added) (citations omitted). The Fifth Circuit recently cited *Smith* when it concluded that "EEOC determinations and findings of fact, although not binding on the trier of fact, are admissible as evidence in civil proceedings as probative of a claim of employment discrimination...." *McClure v. Mexia Independent School District,* 750 F.2d 396, 400 (5th Cir.1985).

Under the plaintiff's theory the court would be bound to follow the findings of the EEOC when they were favorable to federal employees; however, the court would not be bound by EEOC findings if they were unfavorable to an employee. Thus, the cases of federal employees would be handled in a different manner than the cases of private or state government employees. We think *Chandler* makes it clear that Congress did not intend such a result. Rather, it was the intention of Congress that federal, state and private employees be treated similarly with respect to trials in the federal courts.

Since private and state government employees are subject to de novo review by the district court of both favorable and unfavorable administrative findings, federal employees are also subject to de novo review. Thus, we hold that where a federal employee files a suit in the district court after the EEOC has rendered a favorable or unfavorable decision, the district court is not bound by the order or findings of the EEOC. The district court has the power to *independently* determine the merit of each of the employee's claims. We therefore hold that the district court did not err when it declined to enforce the final order of the EEOC.

For the foregoing reasons, we affirm the order of the district court.

AFFIRMED.