Grant ANTHONY, Plaintiff,

v.

Otis R. BOWEN,* Defendant.

Civ. A. No. 84–0385.

United States District Court,
District of Columbia.

April 25, 1986.

---

* Pursuant to Federal Rule of Civil Procedure 25(d)(1), defendant Otis R. Bowen, Secretary of Health and Human Services, has been substituted for Margaret M. Heckler, who no longer holds this post.

Glenn H. Carlson, Kenney, Carlson & Warren, P.C., Washington, D.C., for plaintiff.

Asst. U.S. Atty. Patricia D. Carter, for defendant.

## ORDER

JOYCE HENS GREEN, District Judge.

This case is before the Court on cross-motions for summary judgment. Plaintiff Grant Anthony presently has a Title VII administrative complaint pending before defendant, and an investigation of that complaint is in progress. He seeks an order directing defendant to investigate certain of his claims of illegal discrimination, which he contends defendant has wrongfully refused to investigate, and an order barring defendant from "reopening" an investigation into another claim of discrimination that plaintiff claims has been resolved in his favor. For the reasons set forth below, the Court will grant plaintiff's motion in part and deny it in part, and grant defendant's motion in part and deny it in part.

### I. *Background*

At all relevant times, plaintiff, a black male, has been employed as a psychiatric patient care technician at the National Institutes of Health ("NIH"), a branch of the Department of Health and Human Services ("HHS"). On February 16, 1979, plaintiff wrote an equal employment opportunity counselor complaining that he was being discriminated against on the basis of his sex and race. Among other things, he complained about the lack of training programs for promotion of non-professionals such as himself and unfair performance appraisals; he made no mention, however, of the fact that he had not been selected for promotion to any of the eighteen Stride positions for which he believes he was qualified. In an informal complaint filed February 20, 1979, the EEO counselor summarized plaintiff's allegations, identifying the principal acts of discrimination as plaintiff's supervisors' failure to promote him, their use of special leave procedures to

harass him, and the agency's failure to provide appropriate training opportunities.

On June 22, 1979, counselor Robert White filed a report on plaintiff's informal complaint. In a brief description of the complaint, the counselor noted plaintiff's concern that his supervisors' allegedly unfair appraisals of his work had "result[ed] in his not being selected for any of the eighteen [Stride] programs he applied for, thus hindering his professional development." Report of Informal Complaint of Discrimination at 2, Attachment 6 to Defendant's Response to Plaintiff's Request for Admissions. An undated Narrative Report, which presumably accompanied the informal complaint report, indicates that the counselor investigated this allegation to determine whether plaintiff's nonselection to the Stride Program was attributable to his performance ratings. Narrative Report at 1, Attachment 3 to Defendant's Response to Plaintiff's Request for Admissions. On May 10, 1979, prior to the preparation of these reports, plaintiff filed his formal complaint of discrimination. In explaining his charges, he stated, in part, that

[c]ontinuing education designed to further career potential is denied black workers. Since most workers in the GS–621 series are black this denial takes place by means of generally withholding formal advanced training in the series. Additionally, where black people were deemed highly qualified for the Stride Program those positions were cancelled.

Formal EEO Complaint at 1. As part of his requested relief, plaintiff sought a "program of continuing education in [his] field that will allow advancement and referral to a reasonable program." *Id.* at 2. The complaint, however, does not expressly refer to plaintiff's failure to be promoted to any of the eighteen Stride positions as an act of discrimination.

On August 9, 1979, Morris Williams, an EEO specialist, wrote Nancy Bradley of the NIH Labor Management Branch concerning plaintiff's charges of discrimination. In a synopsis of the complaint, Williams reiterates plaintiff's contention that unfair appraisals of his work "resulted

in his not being selected for any of the eighteen positions he applied for under the Stride Program, thus, hindering his professional development." *See* Plaintiff's Request for Admissions, Attachment C. Two Statement of Allegations forms, one prepared by the EEOC investigator and the other by plaintiff's counsel, specifically mention plaintiff's nonselection for the eighteen Stride positions. *See id.*, Attachments G & H.[1] The EEOC's August 12, 1981 Recommended Disposition of plaintiff's complaint notes that plaintiff applied for eighteen Stride positions, but the report only discusses the five positions for which plaintiff believed he was highly qualified. *See id.*, Attachment I.

In its Recommended Disposition, the EEOC concluded that there was "reasonable cause" to believe that the special leave procedures NIH imposed upon plaintiff were motivated by racial discrimination, but found no probable cause to believe that plaintiff's nonselection to five of the Stride positions was the result of discrimination. The report made no mention of the remaining thirteen Stride positions for which plaintiff applied. The Recommended Disposition was automatically adopted by NIH following the lapse of thirty days; nevertheless, NIH formally adopted the EEOC report as its own on April 5, 1982. By letter dated August 21, 1982, plaintiff exercised his rights under 29 C.F.R. § 1613.218 and requested a hearing with respect to the Stride issues only. On December 16, 1982, the hearing examiner remanded the matter to the agency because it failed to provide plaintiff with a letter accepting or rejecting issues for investigation and because the examiner deemed the agency's investigation inadequate. *See* Plaintiff's Request for Admissions, Attachment L. On remand, the agency accepted for investigation only four of the eighteen nonselection issues, and reopened for further investigation the special leave issue.

## II. *Discussion*

### A. *The Scope of the Investigation*

Defendant takes the position that it has not improperly limited the scope of its investigation, but rather is investigating those issues raised in plaintiff's May 10, 1979 complaint. The only reference to the Stride Program in the complaint is the allegation that "where black people were deemed highly qualified for the stride program those positions were cancelled." Defendant therefore accepted for investigation plaintiff's nonselection to the four positions for which he was highly qualified. As the other fourteen positions were not mentioned in the complaint, they were not accepted.

Plaintiff, on the other hand, argues that the agency had notice that all eighteen positions were at issue by virtue of the EEO counselor's report, the EEO Statement of Allegations forms, and the Williams' memorandum to NIH's Labor Management Branch. In addition, governing regulations require that before an issue may be raised in a formal complaint, it must first be brought to the attention of the EEO counselor. 29 C.F.R. § 1613.214(a)(1). Plaintiff contends that the agency, in order to insure compliance with this requirement, had to review the EEO reports and memoranda and thus had to know that all eighteen positions were at issue. Finally, plaintiff believes that the formal complaint did raise the nonselection issue for all eighteen positions by alleging that continuing education opportunities were denied black employees.

■ Neither party has directed the Court's attention to any case involving a challenge to the scope of an administrative investigation, nor has the Court found any. The Court is of course mindful of the broad remedial purposes animating Title VII, *see Jarrell v. United States Postal Service*, 753 F.2d 1088, 1091 (D.C.Cir.1985), and the correlative rule that complaints in employment discrimination cases are to be broadly

1. The form prepared by the investigator, Attachment C to Plaintiff's Request for Admissions, was neither signed nor dated; the form prepared by plaintiff's counsel was executed but undated. In its Response to Plaintiff's Request for Admissions, however, defendant admitted that the documents were genuine.

construed. Nevertheless, the Court cannot accept plaintiff's argument that statements in EEO conciliation reports and pre-complaint correspondence are somehow incorporated into a formal administrative complaint simply because responsible persons within an agency have notice of those statements. Title VII "provides for a careful blend of administrative and judicial enforcement powers" in federal employment discrimination cases, *Brown v. General Services Administration*, 425 U.S. 820, 833, 96 S.Ct. 1961, 1968, 48 L.Ed.2d 402 (1976), and vests primary responsibility for maintaining nondiscrimination in federal employment with the agencies themselves. *Kizas v. Webster*, 707 F.2d 524, 544 (D.C. Cir.1983). Governing EEO regulations, set out at 29 C.F.R. §§ 1613.201–1613.283, require an employee who believes he or she has been discriminated against to initially seek counseling with an EEO officer. If this fails to resolve the matter, an aggrieved employee may then file a formal complaint with the agency. In order to ensure that every effort is made to resolve disputes at the informal counseling stage, the regulations bar an employee from raising issues in a formal complaint that were not first presented to the EEO counselor. 29 C.F.R. § 1613.214(a)(i).

It is apparent from the regulatory scheme, then, that the parameters of an employee's charge of discrimination must be found in the formal complaint itself, and cannot be expanded by reference to statements made at the counseling stage. The whole purpose of requiring initial recourse to informal dispute resolution efforts is to eliminate or reduce the matters at issue before the formal administrative machinery is set in motion. If informal counseling proves unsuccessful, an employee is free to raise any and all issues discussed at the counseling stage in his or her formal complaint. But if fewer charges are brought in the complaint than were aired informally, the agency is entitled to believe that the matters not raised in the formal complaint have been resolved or are no longer sufficiently important to the employee. To allow a complainant to incorporate into a formal complaint all matters discussed at the informal stage would undermine and subvert the purpose of the informal counseling requirement.

Thus, the informal complaints and other memoranda that plaintiff points to may not properly be used to define the scope of his formal complaint. At most, these documents put agency officials on notice that plaintiff *at one time* challenged his nonselection to the eighteen Stride positions; unless he reiterated that challenge in his formal complaint, however, they were not obliged to investigate into the matter.

█ Turning to the complaint itself, the only statements concerning the Stride positions are found in paragraph two, which reads:

Continuing education designed to further career potential is denied black workers. Since most workers in the GS–621 series are black this denial takes place by means of generally withholding formal advanced training in the series. Additionally, where black people were deemed highly qualified for the Stride Program those positions were cancelled.

Broadly construed, this language can be read as raising the issue of plaintiff's nonselection to the Stride positions for which he was highly qualified. It cannot be stretched so far as to include the remaining positions, however, as the complaint does not even mention them. The advanced formal training plaintiff refers to is unrelated to the Stride Program, which offers on-the-job training at the entry level of different occupational series, and the reference to "continuing education" opportunities is far too general to be viewed as fairly raising plaintiff's allegation that unfair performance appraisals cost him promotion to the eighteen Stride positions. The memoranda, statements of allegations forms and other pre-investigation documents plaintiff relied upon in arguing that the agency had notice of his claim, all state the nonselection issue for all eighteen positions clearly and unequivocally; even under the most tortured reading, however, no such claim can be found in the formal complaint itself. The Court is constrained to find, therefore, that for whatever reason, plaintiff failed to in-

clude his nonselection for all eighteeen Stride positions in his formal complaint, and accordingly, that the agency need only investigate those Stride positions for which plaintiff was deemed highly qualified.

### B. *The Leave Issue*

In its Recommended Disposition, the EEOC concluded that there was reasonable cause to believe the agency had applied special leave procedures to plaintiff in a discriminatory manner, and recommended that such leave procedures be administered fairly and that plaintiff be removed from such status. Under governing regulations, that disposition became the agency's when it failed to issue its own disposition within thirty days. 29 C.F.R. § 1613.216. Well after this period lapsed, defendant formally adopted the Commission's disposition. On August 21, 1982, plaintiff requested a hearing pursuant to 29 C.F.R. § 1613.218 on the Stride issues. On remand from the hearing examiner, the agency reopened the special leave issue even though plaintiff had not requested a hearing on the matter.

Defendant justifies this action on two grounds: (1) the termination of plaintiff's leave restrictions was unrelated to the investigation of his discrimination complaint and therefore was not part of a final disposition of his complaint, and (2) the disposition of this claim is not final since both parties can seek *de novo* review of the decision in federal court. Both justifications are without merit. Defendant's argument that it never executed the EEOC's proposed remedial order, but rather removed plaintiff from restricted leave status because of his improved behavior, is entirely beside the point. Both by operation of the governing regulations and its own formal adoption of the recommended disposition, the agency issued as its own remedial order the termination of plaintiff's leave status and the requirement that such procedures be applied in a nondiscriminatory manner in the future. The fact that the agency may have earlier removed plaintiff from restricted status for other reasons in no way changes its formal disposition of his charge. Defendant's argument that the availability of *de novo* review renders its disposition non-final is also misplaced. Defendant relies on *Moore v. Devine*, 767 F.2d 1541 (11th Cir.1985), in which the Eleventh Circuit ruled that, just as federal employees are entitled to *de novo* review of adverse EEOC findings, so too federal agencies may challenge in federal court EEOC rulings adverse to them. *Moore*, however, is simply inapposite to the present case. The agency here did not challenge the EEOC's findings, but adopted those findings *as its own.* Whatever right it had to *de novo* review of the EEOC's findings on the special leave issue was forfeited by its adoption of those findings. The mere fact that the agency had a right to such review initially cannot justify an agency's decision to reopen issues. Such a rule would render all agency dispositions of discrimination claims non-final and subject to change. Accordingly, the Court grants plaintiff's motion for summary judgment with respect to the special leave claim.

### III. *Conclusion*

For all the foregoing reasons, it is this 24th day of April, 1986

ORDERED that defendant shall investigate plaintiff's nonselection for those Stride positions for which plaintiff was deemed highly qualified, but defendant need not investigate plaintiff's nonselection to any Stride position for which he was not highly qualified; and it is

FURTHER ORDERED that defendant be and it hereby is enjoined from reopening or otherwise investigating plaintiff's claim that defendant discriminated against him in its application of special leave procedures, except to the extent that investigation relates to attorney's fees.

Accordingly, this case be and it hereby is dismissed.

SO ORDERED.