[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-10969
Non-Argument Calendar

_____

D.C. Docket No. 2:10-cv-00471-UA-SPC

NANCY L. BARNETTE,

Plaintiff - Appellant,

versus

FEDERAL EXPRESS CORPORATION,
a Foreign Corporation,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(October 9, 2012)

Before TJOFLAT, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Nancy Barnette appeals the district court's grant of summary judgment in

favor of her former employer, Federal Express Corporation ("FedEx"), on her gender discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Lee County Ordinance No. 00–18.  She argues that (1) the evidence she offers establishes a prima facie case of gender discrimination, (2) sufficient circumstantial evidence demonstrates that FedEx's proffered reasons for her termination were pretext for gender discrimination, (3) FedEx was not entitled to rely on reasons supplied by her supervisor regarding the termination, (4) the district court should have credited the legal determinations made by Lee County's Office of Equal Opportunity, and (5) her case should survive summary judgment under a "mixed motive" analysis.  After review of the briefs and the record, we affirm.

## I. Background

### A.

Barnette began working as a driver for FedEx in 1998.  In July 2002, she transferred to FedEx's Fort Myers facility where Jose Chardon was her supervisor. In November 2002, Barnette was promoted to a full-time position as a "swing driver"—an employee that filled in to cover the routes of drivers who were absent that day.  In August 2004, Chardon issued a "Performance Reminder" to Barnette because she had been involved in two preventable accidents within a twelve-month

2

period.  The letter to Barnette stated that if she had "another preventable accident/occurrence within a 12-month period" she would be issued another Performance Reminder and could receive "severe disciplinary action up to and including termination."  Barnette claims that although she received and signed the document, she did not read it.  Other than the issuance of the Performance Reminder, Barnette had a good track record at FedEx and received positive reviews.

The termination that spurred this lawsuit occurred on November 16, 2004.  Barnette alleges that she was fired because she is a female.  FedEx avers that she lost her job because she violated FedEx's Acceptable Conduct Policy.  Both parties also give very different accounts of the incident on November 9, 2004—the incident that allegedly underlies this termination decision.

We will begin with Barnette's recounting of the events of November 9, 2004.  Barnette was driving her assigned route that morning when suddenly an oversized avian struck the passenger window of her truck.  When later describing the unexpected ornithological occurrence, Barnette claimed that a "pterodactyl" or "some kind of big bird" had collided with her vehicle.  Barnette alleges that she did not report the encounter with the bird immediately "as it was not customary or required for drivers to do so."  She claims that "the record evidence shows that

3

accident reporting was discretionary" and that "Chardon routinely permitted his drivers to exercise independent judgment in the reporting of accidents."  Barnette supports those propositions by citing to Chardon's deposition where he states "if an employee was involved in an accident, they have to report it immediately without moving the truck."  She also cites to the depositions of manager Ariel Mendez and Chardon where they explained that if a driver phoned in but was unable to contact a manager, the driver should contact dispatch or someone else at the company and have that person locate and inform the manager.  Although the record contains some evidence that Chardon or other managers had discretion about how to handle *investigation* of an accident, *nowhere* does the evidence indicate that an employee had any discretion about whether to *report* an accident.[1]

    Barnette estimates that about an hour elapsed between the aviary incident and the eventual caving-in of her window.  After the window shattered inward, Barnette pulled over outside the gated entrance to the Kinzie Island Court ("Kinzie Court") subdivision to clean up the glass.  A landscaper then approached Barnette and asked her if she had hit the gate to the subdivision.  She responded that she had

---

[1] Mendez was questioned about some employees who had not reported accidents about which they were unaware.  We think it rather obvious that not reporting an accident that you do not know exists is not an exercise of discretion.  Mendez was also posed a hypothetical about what a driver should do about reporting if she were stuck in heavy traffic and "unable" to pull over; Mendez replied that FedEx policy required an employee to "report it as soon as it's safe to do so" and indicated that FedEx also had a safety manual.  The fact that an employee was expected to execute his immediate duty to report in a non-dangerous manner that comported with the safety manual does not indicate that the employee had "discretion."

not and explained that the damage was bird-inflicted.  The landscaper offered to assist Barnette in gathering up the glass, but she declined.  Barnette then drove to another location where she could obtain better cellular phone reception and called a FedEx dispatcher to report that her window had been broken.[2]

Barnette was then confronted by Officer Holovacko, who requested that Barnette return to Kinzie Court with him because someone had reported that a FedEx truck had smashed into the automatic gate at the entrance.  Barnette called Chardon and advised him of the situation.  When Barnette and Holovacko returned to the gate, Barnette examined her truck and observed brown paint chips on the lug nuts of her right front wheel.  The brown gate to Kinzie Court had corresponding scrape marks near the bottom.  It was concluded that the gate did indeed close on Barnette's vehicle, but Officer Holovacko declined to issue Barnette a traffic summons because the inward-opening Kinzie Court gate often gives new visitors to the area difficulty.

Chardon then called Barnette, asked for directions to Kinzie Court, and requested that she finish her route and then return to meet him at the FedEx station.  When Barnette spoke with Chardon at the station, he asked her to submit a written

---

[2] Interestingly, Barnette attaches her Equal Employment Opportunity ("EEO") Complaint as an exhibit in support of her motion for summary judgment, and in that EEO Complaint she stated that she called dispatch *before* the window shattered completely, *before* she entered Kinzie Court again, and *before* she spoke with the landscaper.

5

statement about the occurrences of the day, then informed her that she was suspended pending an investigation.  He handed her a letter that explained that she was being investigated for a "possible violation of the Acceptable Conduct Policy." On November 16, Barnette was informed that she was terminated for violating the Acceptable Conduct Policy.  Her termination letter was signed by Chardon. Barnette asserts that she was provided with no other documents explaining the motivation behind the termination decision.

On November 18, Barnette filed a grievance form, disputing her termination. One of the questions on the form inquires whether there were witnesses to the complaint.  Barnette checked the "yes" box and listed as witnesses (1) Officer Holovacko, and (2) "swing driver—Jose Vill[e]gas, reference to the gate."[3]  In response to the question "Have Other Employees Received Different Treatment for The Same Issue?" Barnette responded "yes."  On the line requesting more detail regarding other employees being treated differently for the same issue, Barnette stated that Joe Steeves was only suspended five days for failure to report an accident.  Andre Richardson also had an unreported accident, she explained, and although it was his fourth accident, he was suspended for five days and reassigned. Barnette also completed the portion of the form asking her to list the reasons why

---

[3] In her brief, Barnette explains that Villegas had knowledge of the lack of cellular phone reception on Sanibel Island.  In her step two grievance packet, Barnette stated that Villegas offered to testify regarding the gate's malfunctions.

she felt that management had behaved unfairly.

FedEx responded to the grievance form, stating that Barnette had been terminated for a "violation of the Acceptable Conduct Policy, 2–5, specifically, for failure to report an accident."  FedEx elaborated that after consulting "eye witnesses, along with the Officer's report," it had determined that Barnette "did, in fact, hit the gate and then left the scene and failed to report that to management before further operating a Company vehicle."  Barnette filed another grievance packet, again appealing the termination decision and also alleging that she had been discriminated against on the basis of gender.  In response to the discrimination allegations, FedEx deferred Barnette's case pending completion of an internal Equal Employment Opportunity ("EEO") investigation.  Barnette was forwarded the necessary EEO packet, which she completed.  On February 25, 2005, Bobby Newell, managing director of FedEx's South Florida District, responded to Barnette that her claim of discrimination had been investigated and the "investigation did identify some practices that may be inconsistent with our policies, culture and philosophy."  On March 14, 2005, Barnette was informed that her second grievance form had been reviewed, but that the termination decision would be upheld because (1) she had failed to report a vehicle accident or occurrence, (2) despite her "good work history with the Company" she had

7

"documented . . . vehicle accidents," and (3) no evidence was found to support her discrimination allegations.  On July 7, 2005, Barnette then filed a charge with the Lee County Office of Equal Opportunity.

FedEx's statement of the events of November 9, 2004 is that around 12:15 p.m. that day, Barnette called a dispatcher to report the "pterodactyl" incident. That same day, Ariel Mendez, a senior manager of the Fort Myers station, received a call from an acquaintance of his who was a member of the Sanibel Police Department.  The police officer informed Mendez that a female FedEx driver had struck the gate at Kinzie Court on Sanibel Island and fled the accident scene. Because Mendez was out of the office on November 9, he called Chardon to relay the information that he had received from the police.  Chardon replied that Barnette was the driver on the Sanibel Island route that day and that she had just called to report a pterodactyl crash.  Mendez instructed Chardon to go to Sanibel and investigate.  Following the exchange with Mendez, Chardon received a call from Barnette, who explained that she had just been approached by the police regarding a possible collision with the subdivision gate.  Barnette called again later to confirm that she had indeed struck the gate.

Chardon investigated the incident by photographing both the gate and Barnette's truck and interviewing Jeff Hartman—the landscaper who had offered

8

to assist Barnette.  Hartman had entered through the Kinzie Court gate and then heard a loud crash.  When he returned to the gate, he found that the gate had collided with Barnette's truck and shattered the glass of a window.  Hartman helped Barnette clean up the glass and put the gate back on its hinges.  Hartman told Chardon that after Barnette hit the gate, Hartman had joked with her that she should just tell her manager that a bird had hit her truck.  Hartman also provided a signed, typed statement about the incident that stated the same.[4]  Mendez, Chardon's supervisor, reviewed the photographs taken by Chardon, as well as the written statements of Barnette, Hartman, and the dispatcher.  Mendez also personally inspected Barnette's vehicle.  After reviewing the information that they had collected, Chardon and Mendez concluded that Barnette had hit the Kinzie Court gate, failed to report the accident, and concocted the false "pterodactyl" story to explain how her truck had been damaged.  Chardon and Mendez consulted with a Human Resources advisor and the FedEx Managing Director and ultimately determined that Barnette should be terminated for those actions.

## B.

Barnette filed claims against FedEx alleging that she had been discriminated against on the basis of gender, in violation of Title VII and Lee County Ordinance

---

[4] Barnette contests the validity of this statement and argues that it may be forged.  However, Hartman later made a declaration under oath that he had written and signed the statement, and in his deposition he recounted a version of the facts consistent with those set forth in the statement.

9

No. 00–18.[5]  Barnette stated that she had not violated the Acceptable Conduct policy and that her termination was "based upon her gender."  She argued that "numerous" male employees had been involved in more frequent and more serious accidents than she had.

Barnette and FedEx both filed motions for summary judgment; the district court denied the former and granted the latter.  The district court first found that the comparators that Barnette had offered were not substantially similar to her and thus she had not established her prima facie case.  Second, it found that even if the comparators had been similarly situated, FedEx had a legitimate, nondiscriminatory reason for her termination.  Therefore, Barnette needed to show that FedEx's stated reason for termination was mere pretext for illegal discrimination.  Because FedEx was entitled to rely on Chardon's statements and was entitled to be informed by the photographs and the testimony by the landscaper Hartman, FedEx acted reasonably in inferring from the evidence that Barnette had lied about the events of November 9, 2004.  Barnette now appeals the district court's order.

## II. Discussion

We review *de novo* a district court's grant of summary judgment.  *Holloman*

---

[5] Barnette conflates her Title VII and Ordinance No. 00–18 claims, and the district court found that both had the same elements.

*v. Mail-Well Corp.*, 443 F.3d 832, 836 (11th Cir. 2006).  Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c), *Holloman*, 443 F.3d at 836–37.

Title VII makes it unlawful for an employer "to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).  A plaintiff alleging a violation under Title VII bears the burden of proving that an employer illegally discriminated against her.  *Hinson v. Clinch Cnty.*, 231 F.3d 821, 827 (11th Cir. 2000).  Where, as here, an employee attempts to demonstrate discriminatory intent through circumstantial evidence, we utilize the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S. Ct. 1817, 1824–25 (1973).  *See Maynard v. Bd. of Regents of the Div. of Univs. of the Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003).  Under this framework, Barnette must first establish a prima facie case of discrimination.  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 1094 (1981).  A plaintiff typically accomplishes that by showing that (1) she is a member of a protected class; (2) she was qualified for the position that she held; (3) she suffered an adverse employment action; and (4) she was

11

treated less favorably than a similarly situated individual outside her protected class, *see Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010), but the prima facie case standard is "not inflexible," *Burdine*, 450 U.S. at 253 n.6, 101 S. Ct. at 1094 n.6.  Once a plaintiff has established a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment decision.  *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824.  If the employer presents such a reason, the plaintiff can only prevail by proving that the reason offered is merely pretextual.  *Id.* at 804, 93 S. Ct. at 1825.

In her motion for summary judgment and her response to FedEx's motion for summary judgment, Barnette insisted that she had established a prima facie case by offering evidence of comparators—similarly situated male employees who had been treated more favorably than she.[6]  A comparator must be similarly situated to the plaintiff in all relevant respects.  *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (per curiam) (citations omitted).  "In order to be considered 'similarly situated,' the compared employees must have been 'involved in *or accused of* the same or similar conduct,' yet 'disciplined in different ways' for that conduct."  *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1326 n.17 (11th Cir.

---

[6] FedEx does not dispute that Barnett is a qualified member of a protected class who suffered an adverse employment action.

2011) (emphasis added) (citing *Holifield*, 115 F.3d at 1562). Only two of the six male employees that Barnette offers as comparators were disciplined for failure to report an accident, and both of those employees were found to have been unaware that their accidents occurred. None of the employees were accused of lying about the existence of or events surrounding an accident. Therefore, as the district court found, these comparators are not similar enough to Barnette to provide an adequate basis for her claims.

On appeal, Barnette also points to other evidence in the record that she argues establishes a prima facie case when viewed cumulatively. First, she states that Chardon conducted an insufficient investigation of her accident and that he should have obtained the police report and interviewed more witnesses. Second, she contends that FedEx's proffered reason for her termination changed over time. Although FedEx always maintained that Barnette was fired for a violation of the Acceptable Conduct Policy, she seems to object to the company's elaboration on that reasoning and its provision of more specifics about what part of the policy she failed to observe. Third, Barnette claims that Chardon had a "pattern and practice of discriminating against women."

Barnette supports this third allegation with an assortment of evidence. In April 2003, Chardon exposed his pubic region to his co-workers at a softball

13

tournament; this incident was reported to management during the investigation of Barnette's current claim. In 2004, Monica Fairas filed an EEO complaint alleging that Chardon had discriminated against her on the basis of gender and pregnancy. After investigating that claim, Managing Director Newell found that of the eleven women interviewed, two women (one of which was Farias) felt that Chardon may have discriminated against them. Five females and one of the four males interviewed expressed that they felt disrespected by Chardon. Barnette was interviewed, but she did not report feeling that Chardon discriminated against her. Newell's report concluded that the majority of the evidence showed that Chardon's conduct was "inappropriate not discriminatory," and Chardon was instructed to attend diversity training. During the 2005 investigation of Barnette's EEO complaint, two women reported that Chardon treated women differently than men, but the majority said he did not. Comments were made by both male and female employees that Chardon "is not a people person," "lacks tact," and "just makes you feel as though you're a failure." In 2005, Chardon was accused of accessing the records of another female manager, an incident for which he received discipline. In 2007, Chardon had a romantic relationship with an hourly employee, which was against policy and contributed to his termination that year.

Even if we were to assume that this circumstantial evidence establishes a

14

prima facie case, FedEx provided a legitimate, nondiscriminatory reason for Barnette's termination, and Barnette has failed to counter that with a sufficient showing of pretext. In order to prove pretext, a plaintiff must "demonstrate that the proffered reason was not the true reason for the employment decision . . . by persuading the court that a discriminatory reason more likely motivated the employer or . . . by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S. Ct. at 1095. On November 9, 2004, Mendez was informed by a police officer that a FedEx employee struck the Kinzie Court gate and drove away from the scene. At approximately that same time, a FedEx dispatcher received a call from Barnette, who was driving the route near and around that subdivision, stating that she had been hit by a large bird or a "pterodactyl." Soon afterwards, she phoned again to say that she had been contacted by a police officer and it appeared that she had hit the Kinzie Court gate. When Chardon drove to the scene of the accident, he spoke with a landscaper who had witnessed Barnette hit the gate; the landscaper claimed that he joked with Barnette that she should tell her manager that a bird had hit her vehicle. Chardon and Mendez reasonably determined, on the basis of these facts and other evidence collected, that Barnette had struck the gate, left the scene without reporting the incident, and concocted the bird story to cover up the accident. Barnette was then

15

terminated on the basis of a violation of the Acceptable Conduct Policy, which states that failure to report an accident and falsification of company documents both constitute types of misconduct that may be punishable by termination. Barnette presents no evidence other than her own unsubstantiated allegations that would permit an inference that her managers did not truly believe that she had lied about the November 9, 2004 incident and failed to report an accident.

Barnette argues that FedEx's offered reason does not deserve credence because it has changed over time, but FedEx has maintained that the motivation behind her termination was a violation of the conduct policy. Although FedEx later provided more specifics about the type of violation it found, those specifics were entirely consistent with its earlier stated reasons. Barnette also fails to offer enough evidence to support a finding that her managers had more likely than not acted with a discriminatory motive. Although the record may demonstrate that Chardon was offensive and had conducted himself inappropriately, or could be an unpleasant supervisor, there is little to show that gender discrimination motivated the termination of Barnette. Therefore, because Barnette has not presented enough evidence to allow a finding of pretext, the district court's grant of summary judgment was proper.[7]

---

[7] Barnette also argues under a "cat's paw" theory of liability that Chardon was biased; that his bias infected his report about her incident on November 9, 2004; and that FedEx improperly relied on the biased facts and recommendations in Chardon's report. *See generally Staub v.*

16

Barnette's other claims in this appeal also fail.  First, she contends that if the court were to employ a "mixed motive" analysis, her claims would survive summary judgment.  This argument was not raised below and thus is waived.  *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).  Second, she argues that the district court "completely failed to consider" the evidence in the Lee County Office of Equal Opportunity's investigative files and disregarded its finding that discrimination had occurred.  Once a case reaches district court, the claims of both parties are reviewed *de novo*; EEOC findings *may* be relevant, but their probative value varies.  *Moore v. Devine*, 767 F.2d 1541, 1550–51 (11th Cir. 1985).  EEOC findings are not binding on the district court.  *Id.* Here, the Final Investigative Report in the findings of facts recited Barnette's own statement that a bird hit her truck around 10:40 in the morning, but she did not call to report the incident immediately because she was concerned about being late to other stops on her route.  The Lee County investigator concluded that because Barnette reported the incident on the date it occurred, she had not violated FedEx policy and thus her termination was discriminatory.  Yet the record clearly reveals that FedEx policy required employees to *immediately* report accidents or incidents.

*Proctor Hosp.*, 562 U.S. __, 131 S. Ct. 1186 (2011).  However, the record evidence does not support a finding that Chardon conducted a biased investigation or filed a biased report and that, despite Mendez's independent investigation, such a biased report was a causal factor in FedEx's decision to terminate Barnette; therefore, this claim fails.

17

The district court committed no error in making a *de novo* determination of the correct interpretation of FedEx's policy and ignoring the investigator's finding of discrimination that relied on an incorrect reading of that policy.  There was no error in the district court's treatment and use of the Lee County investigator's report.

**AFFIRMED.**