[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-15332
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 26, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00693-CV-CAM-1

STANLEY MUHAMMAD,

                                                          Plaintiff-Appellant,

versus

AUDIO VISUAL SERVICES GROUP,
d.b.a. Presentation Services,

                                                          Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(May 26, 2010)

Before BLACK, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Stanley Muhammad, proceeding *pro se*, appeals from the district court's grant of summary judgment in favor of his former employer, Audio Visual Services Group ("AVSG"), as to his claims for race discrimination and retaliation, which were brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) and (3)(a). On appeal, Muhammad argues that AVSG's failure to pay him the amount of overtime pay that he requested amounted to race discrimination. Muhammad asserts that, during discovery, AVSG failed to produce its March 2006 payroll roster. He argues that this document would have demonstrated that he was the victim of race discrimination.

In addition, Muhammad argues that the district court erred by granting summary judgment in AVSG's favor as to his retaliation claim, which was based on AVSG's termination of his employment. He argues that AVSG's proffered reasons for his termination—his alleged threat against an AVSG manager and his aggressive demeanor during a telephone call—were false, and constituted a mere pretext for retaliation. In support of this argument, he asserts that Peggy Myers, AVSG's Senior Regional Director for Human Resources, told the Georgia Department of Labor ("DOL") that there was no reason for his termination. In his reply brief, Muhammad attaches an unlabelled and unsigned document, which, he contends, constitutes evidence that a DOL employee interviewed Myers, and that

2

Myers stated that there was no reason for Muhammad's termination. Muhammad also relies on the Equal Employment Opportunity Commission's ("EEOC") determination that it was reasonable to conclude that AVSG had retaliated against him.

For the reasons set forth below, we affirm.

## I.

Through counsel, Muhammad, who is African-American, filed a complaint alleging that AVSG terminated him in violation of his rights under Title VII of the Civil Rights Act of 1964. In his complaint, Muhammad alleged that he had worked on a part-time basis for AVSG as an audio-visual technician. He further alleged that, on March 21, 2006, he learned that his overtime pay rate, which previously had been approved by an AVSG regional director, had been reduced due to his race. Muhammad asserted that, after he complained about this discriminatory treatment, AVSG terminated him on March 27, 2006. Muhammad alleged that these events demonstrated that AVSG had discriminated against him on the basis of his race, and had retaliated against him for engaging in activity that is protected under Title VII. Based on these events, Muhammad had filed charges with the EEOC on March 29, 2006, ultimately receiving a notice of his right to sue.

Near the beginning of the discovery period, the magistrate judge ordered that

a discovery request "must be served sufficiently in advance (usually thirty (30) days) of the deadline for responses to be made within the discovery cut-off date." The parties and the court agreed that the discovery period would end on November 3, 2008. The parties' exhibits reflect that, in his interrogatories and document requests, Muhammad did not request that AVSG produce a copy of the freelance-employee payroll roster for the pay period ending on March 17, 2006. Muhammad's exhibits included, however, an email dated December 4, 2008, in which Muhammad stated that he was "still waiting" for AVSG to produce its payroll roster for March 2006.

After the end of the discovery period, AVSG filed a motion for summary judgment as to both of Muhammad's claims. It supported its motion with a statement of material facts, exhibits, and deposition testimony. These statements, depositions, and exhibits demonstrated the following undisputed facts. AVSG was in the business of providing audio and visual services to clients holding business meetings or presenting large-scale productions. AVSG held a contract with the Westin Peachtree Hotel in Atlanta, Georgia, to provide audio-visual services to the hotel and its guests. In order to satisfy this contract and similar contracts, AVSG employed "as-needed," or freelance, employees. Muhammad began working at the Westin in 2005 as a freelance employee. At that time, Jose Martinez was AVSG's

4

Director at the Westin, and William Parsons was AVSG's Director of Sales at the Westin. The hourly rate that Muhammad would receive for providing audio-visual services was to be negotiated between himself and Martinez.

According to Muhammad's deposition testimony, he and Martinez agreed that he would receive overtime pay at the rate of 1.5 times what he earned during a regular work hour. They further agreed that he would receive overtime pay after he worked 10 hours in a single day, as well as when he worked over 40 hours in a week. As a result, if Muhammad worked 12 hours on four days during a week, he would receive overtime pay for two hours on each of the four days that he worked. In addition to this overtime pay, he would also receive eight hours of overtime pay for the work week.

In his deposition, Parsons testified that, during March 2006, he assumed temporary responsibility for the duties formerly performed by Martinez, including duties related to the payment of freelance audio-visual employees such as Muhammad. In preparing the payroll for freelance employees for the pay period ending on March 17, Parsons learned that there were discrepancies in the overtime pay rates being received by Muhammad and other freelance employees. Parsons believed that AVSG paid overtime rates only where an employee worked more than 40 hours in a week, and did not also pay overtime rates where an employee

5

worked more than 10 hours in a day. Because he believed that the overtime rates that Muhammad and other employees were receiving did not comply with this policy, Parsons contacted Stewart Young, AVSG's Regional Vice President for the Atlanta Hotel Division. Young asked Parsons to forward the payroll information to him.

In his deposition, Young testified that, when he received the payroll information from Parsons, he discovered that Muhammad, Mark Spikes, and Jason Porter, all of whom were black, were being paid overtime pay that was calculated in an "overtime on top of overtime" manner that was inconsistent with AVSG policy. Young considered this overtime pay calculation to be improper, because it resulted in an employee being paid at a rate that was in excess of the value of his work. Young was not aware that some employees had been receiving overtime pay calculated in this manner until he reviewed the March 17, 2006, payroll roster. After reviewing the March 17 payroll roster, Young contacted AVSG's payroll department, and asked it to hold Muhammad's, Porter's, and Spikes's checks until their correct overtime pay rate was determined.

Myers also provided deposition testimony in this case. Myers testified that, on March 23, 2006, Muhammad called her to complain about Young's decision regarding his overtime pay. Myers stated that, "During the conversation, Mr.

6

Muhammad became very upset, had raised his voice, was very angry about the fact that he hadn't been paid his overtime properly in his mind. And he said that [Young] would have to bear the brunt of any result of us not paying him." Myers interpreted this statement as a threat against Young. Later that day, Myers decided to seek Muhammad's termination. After speaking with her supervisor about her concerns arising from Muhammad's telephone call, Myers received permission to terminate Muhammad. Myers stated that she had terminated Muhammad based on his "demeanor during the [March 23] conversation and based on the threat." She explained that Muhammad's tone during the March 23 conversation was "threatening" and "aggressive." When asked whether there was any reason for terminating Muhammad apart from his alleged threat, Myers stated, "[I]t was the threat in addition to the demeanor during the discussion and the demeanor in the communication." On March 27, 2006, Myers informed Muhammad that AVSG had terminated his employment.

Regarding his termination, Muhammad testified that, when he contacted the payroll department to inquire about his delayed check, the department informed him that his overtime pay rate had been changed. Muhammad discussed this change with Young and, according to Muhammad, Young agreed that Muhammad's pending paycheck would include overtime pay at the rate that he had

7

agreed upon with Martinez. When Muhammad received his paycheck, however, it included overtime pay calculated under the new, reduced pay rate. Muhammad further testified that he complained to Myers that Young had mistreated him and other black employees by unfairly reducing their overtime pay rates. Muhammad asked Myers "to look into" Young's treatment of black employees. Muhammad denied that he made a threat against Young during his conversation with Myers, or that he made a statement indicating that Young would bear the "brunt" of the consequences of his decision to reduce Muhammad's overtime pay. Muhammad acknowledged, however, that he was "passionate" during the March 23 telephone conversation, and that he spoke to Myers with "strong emphasis." He asked Myers to "pardon [his] passion," because his tone with her had been "very passionate." On the Monday following March 23, Muhammad again called Myers, and Myers informed him that AVSG had "decided to no longer use his services."

AVSG's exhibits that it submitted in support of its motion for summary judgment included its payroll roster for freelance employees during the pay period beginning on March 11, 2006, and ending on March 17, 2006. This roster showed the work hours reported for numerous freelance employees, including Muhammad, Spikes, and Porter. During his deposition testimony, Muhammad identified one of AVSG's exhibits as AVSG's payroll roster for freelance employees for the pay

8

period ending on March 17, 2006. He stated that he knew that every employee on the March 17 payroll roster, with the exception of Jason Patrick, was black. At the time of his deposition, Muhammad was not aware of Patrick's race. In one of his exhibits, however, Muhammad identified Patrick's race as black.

Muhammad filed a response opposing summary judgment, which he supported with a brief, a statement of disputed facts, and exhibits. Muhammad's exhibits included the affidavit of James Beattie, who averred that his race was white, and that AVSG had employed him as a freelance worker. Beattie further averred that, during March 2006, AVSG had employed him to provide audio-visual labor at the Westin Hotel. Beattie stated that, "[d]uring [his] freelance employment with [AVSG], [his] agreed upon/contracted rate per job was never changed without [his] permission." Beattie did not state whether he had worked during the pay period ending on March 17, 2006. Beattie also did not state whether he had received overtime pay that was calculated based on an "overtime on top of overtime" method.

One of Muhammad's exhibits was an excerpt from the deposition testimony of Spikes, another freelance AVSG employee. Spikes testified that he had not complained to AVSG about the reduction in overtime pay rates because he "didn't want to be retaliated against." He did not explain why he had believed that AVSG

9

would retaliate against him if he complained about his overtime pay.

Muhammad's exhibits also included a document entitled "Georgia Department of Labor Claims Examiner's Determination." This document informed Muhammad that he was considered to be eligible for unemployment benefits. In a section entitled "Reasoning," the DOL stated, in relevant part, "You were fired and no specific reason was given to you." At the bottom of the document, the date of April 14, 2006, was designated as the "date of interview." The document did not indicate who had been interviewed on that date. In addition, this document did not state whether a DOL representative had actually spoken with an AVSG employee regarding Muhammad's termination. The parties' exhibits do not include any additional evidence indicating whether the DOL contacted AVSG or Myers. Although Muhammad, in his deposition testimony, stated that Myers told a DOL unemployment investigator that there was no reason for his termination, he did not explain how he had personal knowledge of whether a DOL investigator had spoken with Myers.

Muhammad's exhibits further included a copy of the EEOC's determination of the merits of his race discrimination and retaliation claims. The EEOC stated that the evidence did not establish that Muhammad was denied wages, suspended, or discharged due to his race. Regarding Muhammad's retaliation claim, the

10

EEOC stated:

> The investigation did reveal, however, that four (4) days after [Muhammad] complained about his wages, he was suspended and later discharged. Respondent's explanation for [Muhammad's] suspension and subsequent discharge is pretextual, and does not withstand scrutiny. Therefore, it is reasonable to conclude that [Muhammad] was suspended and discharged in retaliation for having opposed unlawful employment practices in violation of Title VII.

The EEOC did not set forth any additional facts or reasoning in support of its conclusion regarding Muhammad's retaliation claim.

In addition to filing exhibits in support of his opposition to summary judgment, Muhammad also filed a brief. In his brief, Muhammad argued that AVSG's motion for summary judgment was not ripe because it had failed to produce its payroll roster for March 2006. Muhammad asserted that he had requested that AVSG provide him with this document, and that this document would be probative of the pay rates received by black and white freelance employees. Muhammad further argued that he had established a *prima facie* case of race discrimination because AVSG had reduced the overtime pay rates only of black employees. Muhammad pointed out that Beattie, a white AVSG freelance employee, had executed an affidavit averring that AVSG did not alter his pay rate without his permission.

In his brief, Muhammad also argued that he had established a *prima facie*

11

case of retaliation because he had believed that his complaint to Myers about the discriminatory overtime pay rate constituted protected activity under Title VII. Muhammad contended that the question of whether AVSG had articulated a legitimate, non-discriminatory reason for his termination constituted a disputed issue of fact. Muhammad asserted that he did not make a threat during his conversation with Myers. In addition, he asserted that, when the DOL requested that Myers provide a reason for Muhammad's termination, she did not provide the DOL with a reason. As evidence of this, Muhammad relied on his own testimony and the DOL's notice that he was entitled to unemployment benefits. Muhammad contended that, due to Myers's failure to provide a reason for Muhammad's termination to the DOL, the EEOC concluded that AVSG had retaliated against him. Based on this evidence, Muhammad argued, a jury could determine that AVSG's proffered reason for his termination was a mere pretext for retaliation.

In the report and recommendation, the magistrate recommended that the district court grant AVSG's motion for summary judgment. The magistrate found that Muhammad's ripeness argument lacked merit because he did not point to any documents indicating that he had requested that AVSG produce its March 2006 payroll roster, nor had he filed a motion to compel the production of this evidence. In addition, the magistrate determined that Muhammad had failed to explain how

12

this evidence would demonstrate that summary judgment was not appropriate.

Addressing the merits of Muhammad's race discrimination claim, the magistrate found that he had failed to establish a *prima facie* case because he did not point to a white employee who was permitted to receive overtime pay calculated based on an "overtime on top of overtime" method. Accordingly, the magistrate concluded that the court should grant summary judgment in favor of AVSG as to Muhammad's race discrimination claim.

The magistrate also found that Muhammad had failed to establish a *prima facie* retaliation claim. Because Muhammad alleged that AVSG retaliated against him before he filed a formal charge with the EEOC, the magistrate found that Muhammad's retaliation claim was brought under Title VII's opposition clause, rather than the participatory clause. As a result, the magistrate determined that Muhammad was required to show that, at the time he voiced his complaint to Myers, he held an objectively reasonable good faith belief that AVSG had engaged in unlawful discrimination. The magistrate found that Muhammad's belief that he was the victim of discrimination was not objectively reasonable, because he was not aware of any white employee who received overtime pay calculated based on the "overtime on top of overtime" method. The magistrate further found that, even assuming that Muhammad had established a *prima facie* retaliation case, AVSG

13

had articulated a legitimate, non-discriminatory reason for his termination because Myers had requested Muhammad's termination based on his angry demeanor and his threat against Young.

Having determined that AVSG had articulated a legitimate, non-discriminatory reason for Muhammad's termination, the magistrate went on to find that none of the facts that Muhammad had pointed to in his brief demonstrated that AVSG's proffered reason for his termination was pretextual. Specifically, the magistrate determined that the DOL's statement regarding unemployment benefits was not evidence of pretext because it reflected only that Muhammad did not provide the DOL with a reason for his termination, and did not show that AVSG had failed to provide the DOL with a reason for Muhammad's termination. Regarding the EEOC's determination, the magistrate found that the court was not required to defer to the EEOC's finding in deciding summary judgment. Moreover, the magistrate stated, the EEOC's finding in this case was conclusory, and thus failed to create a genuine issue of material fact regarding pretext. Accordingly, the magistrate concluded that the court should grant summary judgment in favor of AVSG as to Muhammad's retaliation claim.

Shortly after the magistrate entered the report and recommendation, counsel for Muhammad withdrew from the case. Muhammad, proceeding *pro se*, filed

objections to the report and recommendation.

In his objections, Muhammad argued that AVSG's alleged refusal to provide him with the payroll roster for the pay period ending on March 17, 2006, constituted circumstantial evidence of race discrimination. Muhammad also argued that he was terminated in retaliation for opposing race discrimination. Relying on the DOL's letter, Muhammad asserted that Myers did not provide the DOL with a reason for his termination. In an amendment to his objections, Muhammad specifically asserted that the DOL had asked Myers why Muhammad was terminated during a telephone conversation that took place on April 14, 2006. Muhammad did not cite to any evidence in support of this contention.

The district court overruled Muhammad's objections and adopted the magistrate's report and recommendation. The court determined that Muhammad's primary objection to the report and recommendation was the magistrate's reliance on Myers's testimony in finding that there was no merit to his retaliation claim. The court, however, found that it was undisputed that Myers had honestly believed that Muhammad's demeanor during the March 23 telephone call was "threatening." The court also found that Myers had sought Muhammad's termination based not only on his alleged threat against Young, but also based on his inappropriate tone. Accordingly, the court concluded that AVSG had presented

15

a legitimate, non-discriminatory reason for Muhammad's termination, which Muhammad had failed to rebut. In addition, the court determined that summary judgment was appropriate as to Muhammad's race discrimination claim because he had failed to show that he was treated differently from a similarly situated comparator. Accordingly, the court entered summary judgment in favor of the DOC.

## II.

We review the district court's ruling on summary judgment *de novo*. *Rojas v. Florida*, 285 F.3d 1339, 1341 (11th Cir. 2002). The moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "When deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Rojas*, 285 F.3d at 1341-42 (quotation omitted). We liberally construe a *pro se* litigant's pleadings. *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990).

Title VII provides "that it is unlawful for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or

16

privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997) (quotation omitted). A plaintiff may rely on circumstantial evidence to establish a *prima facie* case of discrimination. *Id.* at 1561-62. When relying on circumstantial evidence to support his claim, a plaintiff may demonstrate a *prima facie* case of discrimination by showing that: "(1) he belongs to a [protected class]; (2) he was subjected to [an] adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job." *Id.* at 1562. "To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the employees are similarly situated in all relevant respects." *Id.* If a plaintiff cannot identify a similarly situated comparator who was treated more favorably than himself, then "summary judgment is appropriate where no other evidence of discrimination is present." *Id.*

Here, the district court did not err in granting summary judgment in AVSG's favor as to Muhammad's race discrimination claim, because Muhammad failed to demonstrate a *prima facie* case of race discrimination. Muhammad failed to point to a white employee who received overtime pay calculated based on an "overtime on top of overtime" method. In addition, he failed to demonstrate that Young

17

knowingly permitted any employee, white or black, to receive overtime pay calculated in this manner. While Young reduced the overtime pay of only black freelance employees, the record also shows that no white freelance employees worked during the pay period ending on March 17, 2006. Beattie's affidavit did not prove otherwise, since Beattie did not state that he worked during the pay period ending on March 17, 2006, or received overtime pay calculated based on an "overtime on top of overtime" method. Accordingly, Muhammad failed to point to a similarly situated white comparator who was treated more favorably than himself.

Moreover, Muhammad also failed to point to additional evidence giving rise to an inference of discrimination. While he emphasizes that AVSG allegedly failed to provide him with the payroll roster for the pay period ending on March 17, 2006, this argument lacks merit. Muhammad's interrogatories did not include a request that AVSG produce this document. While Muhammad's exhibits included an email to AVSG's counsel stating that he was waiting for them to produce this document, this email was dated December 4, 2008, well after the discovery period ended on November 3, 2008. Moreover, AVSG included this document in the exhibits that it filed in support of its motion for summary judgment, and Muhammad identified and discussed this document during his

18

deposition testimony. The March 17, 2006, payroll roster did not indicate that any white freelance employees worked during that period, or were permitted to receive overtime pay calculated based on an "overtime on top of overtime" method. Accordingly, there is no evidence that AVSG concealed this document from Muhammad, or that the information in this document created a genuine issue of material fact regarding Muhammad's race discrimination claim.

**III.**

Under 42 U.S.C. § 2000e-3(a), an employer may not discriminate against an employee because "he has opposed any practice made an unlawful employment practice [under Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a); *E.E.O.C. v. Total System Services, Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000). The statute's participation clause "protects proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC." *Total System Services, Inc.*, 221 F.3d at 1174. The opposition clause, on the other hand, protects activity that occurs before the filing of a formal charge with the EEOC, such as submitting an internal complaint of discrimination to an employer, or informally complaining of discrimination to a supervisor. *See id.*; *see also Rollins v. State of Fla. Dep't of Law Enforcement*, 868

19

F.2d 397, 400 (11th Cir. 1989).

In order to establish a *prima facie* case of retaliation, the plaintiff may show that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is some causal relationship between the two events. *Holifield*, 115 F.3d at 1566. Where a plaintiff is proceeding under the opposition clause, "the plaintiff need not prove the underlying claim of discrimination which led to [his] protest." *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1494 (11th Cir. 1989). Nevertheless, the plaintiff must show that he held a reasonable good faith belief that the discrimination existed. *Id.* In order to demonstrate that he held a reasonable, good faith belief that discrimination occurred, the plaintiff must show not only that he subjectively believed that his employer's behavior was discriminatory, "but also that his belief was objectively reasonable in light of the facts and record presented." *Butler v. Alabama Dep't of Transp.*, 536 F.3d 1209, 1213 (11th Cir. 2008). "The objective reasonableness of an employee's belief that [his] employer has engaged in an unlawful employment practice must be measured against existing substantive law." *Clover v. Total System Services, Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999). "Where binding precedent squarely holds that particular conduct is not an unlawful employment practice by the employer, and no decision of this Court or of the

20

Supreme Court has called that precedent into question or undermined its reasoning, an employee's contrary belief that the practice is unlawful is unreasonable." *Butler*, 536 F.3d at 1214.

"Once the plaintiff establishes his prima facie case, the employer must proffer a legitimate, non-discriminatory reason for the adverse employment action." *Holifield*, 115 F.3d at 1566. This burden is "exceedingly light." *Meeks v. Computer Assoc. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994). "If the employer offers legitimate reasons for the employment action, the plaintiff must then demonstrate that the employer's proffered explanation is a pretext for retaliation." *Holifield*, 115 F.3d at 1566. In order to demonstrate pretext, "[t]he plaintiff must meet the reason proffered head on and rebut it." *Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1308 (11th Cir. 2007).

In assessing the merits of a plaintiff's claims under Title VII, a court is not required to defer to the EEOC's determination of the merits of the claim. *Moore v. Devine*, 767 F.2d 1541, 1549-51 (11th Cir.1985), *modified on reh'g*, 780 F.2d 1559, 1560 (11th Cir.1986); *see also Price v. Federal Exp. Corp.*, 283 F.3d 715, 719, 725 (5th Cir. 2002). Instead, the court must conduct a *de novo* review of the claims. *Moore*, 767 F.2d at 1550-51. "[W]hile EEOC findings in general may be significant evidence, their probative force in individual cases varies considerably

21

and is left to the determination of the trial court." *Id.* (quotation omitted).

Here, the district court did not err in granting summary judgment in AVSG's favor as to Muhammad's retaliation claim. Because Muhammad alleged that AVSG retaliated against him before he filed a charge with the EEOC, the magistrate correctly determined that his retaliation claim fell under the opposition clause, and that Muhammad was thus required to show that he held a reasonable, good faith belief that unlawful discrimination had occurred. Muhammad failed to show that he held an objectively reasonable belief that AVSG had engaged in race discrimination. As discussed in the previous section, we have recognized that a black plaintiff may show that his employer engaged in race discrimination by pointing to a similarly situated white comparator that was treated more favorably than he was treated, or by pointing to additional evidence giving rise to an inference of discrimination. As noted above, Muhammad had no evidence that white employees were treated more favorably than black employees regarding their overtime pay rates, and was aware of no other credible evidence of race discrimination. Due to this lack of evidence, Muhammad's belief that race discrimination had occurred was not objectively reasonable when viewed in light of our precedent addressing race discrimination claims. Because Muhammad did not hold an objectively reasonable belief that AVSG had engaged in race

discrimination, he failed to make a *prima facie* showing of retaliation.

Moreover, even assuming that Muhammad could demonstrate a *prima facie* retaliation claim, AVSG articulated a legitimate reason for his termination. Accepting as true Muhammad's testimony that he did not articulate a threat during his conversation with Myers, he admitted that his demeanor during this conversation was passionate, and he did not contest that Myers found his tone and demeanor to be offensive. Accordingly, AVSG has met its "exceedingly light" burden of articulating a legitimate reason for Muhammad's termination—his tone and demeanor during his March 23 telephone conversation with Myers, which she perceived to be offensive.

Muhammad failed to demonstrate that this reason was a mere pretext for retaliation. Although Muhammad testified during his deposition that Myers told a DOL representative that there was no reason for his termination, he did not explain how he had personal knowledge of this matter. The DOL's determination regarding Muhammad's unemployment benefits does not indicate that a DOL representative contacted AVSG about Muhammad's termination. In addition, the document that Muhammad has attached to his reply brief, which, he asserts, constitutes evidence that Myers spoke with a DOL representative, was not submitted to the district court. Even assuming that we properly could consider this

document on appeal, this document does not indicate that it was generated by the DOL. While Muhammad also relies on the EEOC's determination that he was the victim of retaliation, the district court was required to conduct a *de novo* review of the merits of Muhammad's claims, and was not required to defer to the EEOC's conclusion as to his retaliation claim. Moreover, the EEOC did not provide facts or reasoning in support of its conclusion. As a result, the court did not err by failing to attribute significant probative value to the EEOC's determination. Thus, even assuming that Muhammad could demonstrate a *prima facie* claim of retaliation, his evidence does not demonstrate that AVSG's proffered reason for his termination was pretextual, and the court did not err in granting summary judgment as to this claim.

**AFFIRMED.**